IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| TIMOTHY RICE, : | |
|     Plaintiff, : | |
| : | |
| v. : | CIVIL ACTION NO. 24-CV-1501 |
| : | |
| C/O KERNIZAN, : | |
|     Defendant. : | |

**MEMORANDUM**

**HODGE, J.**                                                                                                                                    **JANUARY 17, 2025**

      Plaintiff Timothy Rice, a *pro se* convicted and sentenced prisoner currently incarcerated at SCI Phoenix, filed this civil rights action pursuant to 42 U.S.C. § 1983, alleging that correctional officers at SCI Phoenix used excessive force on him while he was in full restraints. (ECF No. 2.) Currently before the Court is Defendant's Motion to Dismiss the Complaint, filed pursuant to Federal Rule of Civil Procedure 12(b)(6) by Defendant Correctional Officer Kernizan, the only Defendant who remains in this case following statutory screening.[1] (ECF No. 20; *see also* ECF Nos. 6, 7.) For the following reasons, the Court will grant the Defendant's Motion, and Rice's Complaint will be dismissed.

**I.**       **FACTUAL ALLEGATIONS AND PROCEDURAL HISTORY**

      Rice filed his Complaint naming four Defendants, all of whom are employed by the Pennsylvania Department of Corrections ("DOC") at SCI Phoenix. (ECF No. 2 at 3-5.)[2] Rice alleges that correctional officers assaulted him on March 28, 2023, while he was in full restraints

---

[1]     In Defendant's Motion to Dismiss, counsel for Defendant indicated that Rice misspelled Defendant Kernizan as "Karaston" in his Complaint. The Court will direct the Clerk of Court to amend the docket to reflect the correct spelling. For purposes of this Memorandum, the Court will adopt the proper spelling and refer to the sole Defendant as Kernizan.

[2]     The Court adopts the pagination supplied by the CM/ECF docketing system.

1

in the "L-Block yard" at SCI Phoenix. (*Id.*) Specifically, Rice asserts that while he was being escorted by Correctional Officer Kernizan and another officer whom he does not identify, Kernizan threatened Rice, telling him that "when I get you in [the] yard we [are] going to beat your ass." (*Id.* at 5.) Rice alleges that while he was on the ground in full restraints, he was kicked in the ribs by Kernizan, his head was banged on the ground several times, and another officer punched him in the face. (*Id.* at 4-5.) Rice asserts that he suffered a severe head injury resulting in a permanent headache, short term memory loss, and emotional distress. (*Id.* at 5.) Rice seeks $1.2 million in monetary damages. (*Id.*)

In a June 5, 2024 Memorandum and Order, the Court granted Rice leave to proceed *in forma pauperis* and dismissed his Complaint in part with prejudice and in part without prejudice on statutory screening pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii), while permitting his excessive force claim to proceed against Kernizan in his individual capacity. *Rice v. Karaston*, No. 24-1501, 2024 WL 2848296 (E.D. Pa. June 5, 2024); (*see also* ECF No. 6.). Rice's official capacity claims were dismissed with prejudice based on Eleventh Amendment immunity, and his claims against Officer Mantuce, Officer Antwon, and Unit Manager Grady were dismissed without prejudice due to lack of personal involvement. *Rice v. Karaston*, No. 24-1501, 2024 WL 2848296, at *2-*3. Although Rice was provided the opportunity to file an amended complaint as to any claims dismissed without prejudice, he did not do so, instead notifying the Court that he wished to proceed only on his excessive force claim against Defendant Kernizan in his individual capacity. (*See* ECF Nos. 8, 10.) Officer Mantuce, Officer Antwon, and Unit Manager Grady were subsequently terminated as Defendants, and service was made on Defendant Kernizan. (*See* ECF Nos. 11, 17.)

After being served, Defendant Kernizan filed a motion to dismiss the claims against him. Specifically, Kernizan moves to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) on

the basis that Rice failed to exhaust his administrative remedies prior to filing this lawsuit, as required by the Prison Litigation Reform Act ("PLRA"), in accordance with DC-ADM 804,[3] the grievance policy of the Pennsylvania Department of Corrections ("DOC"). (ECF No. 20.) Rice responded to the motion, arguing that he exhausted required remedies and that the "DOC at SCI Phoenix fail[ed] to give [him] a timely response" to his written appeal. (*See* ECF No. 23 at 2.) The Court addresses the parties' arguments below.

## II.     STANDARD OF REVIEW

"A 12(b)(6) motion tests the sufficiency of the allegations contained in the complaint." *Kost v. Kozakiewicz*, 1 F.3d 176, 183 (3d Cir. 1993). In deciding a motion to dismiss under Rule 12(b)(6), the Court must determine whether the complaint contains "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. (citing *Twombly*, 550 U.S. at 556). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Twombly*, 550 U.S. at 555.) "Although the plausibility standard does not impose a probability requirement, it does require a pleading to show more than a sheer possibility that a defendant has acted unlawfully." *Connelly v. Lane Const. Corp.*, 809 F.3d 780, 786 (3d Cir. 2016) (internal quotation marks and citations omitted). It is the defendant's burden to show that a complaint fails to state a claim. *See Hedges v. United States*,

---

[3]     DC-ADM 804 is available online. DC-ADM 804, *Inmate Grievance System*, *available at* https://www.pa.gov/content/dam/copapwp-pagov/en/cor/documents/about-us/doc-policies/804%20Inmate%20Grievances.pdf (effective May 1, 2015; last viewed January 15, 2025).

404 F.3d 744, 750 (3d Cir. 2005) (explaining that on a Rule 12(b)(6) motion to dismiss, the "defendant bears the burden of showing that no claim has been presented").

In resolving a Rule 12(b)(6) motion, "a court must consider only the complaint, exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents." *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010). To determine whether a complaint filed by a *pro* se litigant states a claim, a court must accept the facts alleged as true, draw all reasonable inferences in favor of the plaintiff, and "ask only whether that complaint, liberally construed contains facts sufficient to state a plausible . . . claim." *Shorter v. United States*, 12 F.4th 366, 374 (3d Cir. 2021) (cleaned up), *abrogated on other grounds recognized by Fisher v. Hollingsworth*, 115 F.4th 197 (3d Cir. 2024); *see also Vogt v. Wetzel*, 8 F.4th 182, 185 (3d Cir. 2021) (*pro se* filings are construed liberally).

### III.   APPLICABLE LAW

The PLRA "mandates that prisoners exhaust internal prison grievance procedures before filing suit." *Small v. Camden Cnty.*, 728 F.3d 265, 268 (3d Cir. 2013); *see* 42 U.S.C. § 1997e(a) ("No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."). "Exhaustion is . . . a non-jurisdictional prerequisite to an inmate bringing suit and, for that reason, . . . it constitutes a threshold issue that *courts* must address to determine whether litigation is being conducted in the right forum at the right time." *Rinaldi v. United States*, 904 F.3d 257, 265 (3d Cir. 2018) (internal quotations omitted). Accordingly, in cases governed by the PLRA, courts must address whether the prisoner-plaintiff has substantially complied with the prison's specific grievance procedures and determine whether those procedures were available to the inmate. *Id.* "Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules." *Woodford v.*

*Ngo*, 548 U.S. 81, 90 (2006); *Prater v. Dep't of Corr.*, 76 F.4th 184, 203 (3d Cir. 2023) (courts "determine whether a prisoner has properly exhausted a claim by evaluating the prisoner's compliance with the prison's administrative regulations governing inmate grievances" (internal quotations omitted)). The Court is bound by the PLRA to apply the prison's available administrative exhaustion rules, however stringent. *See* 42 U.S.C. 1997e(a); *Jones v. Bock*, 549 U.S. 199, 218 (2007). Claims that are not properly exhausted under the PLRA are procedurally defaulted. *See Woodford*, 548 U.S. at 92-93; *Spruill v. Gillis*, 372 F.3d 218, 230 (3d Cir. 2004).

"[W]here a defendant moves to dismiss based on a failure-to-exhaust defense and the exhaustion issue turns on indisputably authentic documents related to the inmate's grievances, [a court] may consider those documents without converting a motion to dismiss to a motion for summary judgment." *Rinaldi*, 904 F.3d at 261 n.1 (internal quotations and alterations omitted); *Spruill*, 372 F.3d at 223 ("Given that the exhaustion issue turns on the indisputably authentic documents related to Spruill's grievances, we hold that we may also consider these without converting it to a motion for summary judgment."); *Brown v. Croak*, 312 F.3d 109, 111 (3d Cir. 2002) ("In appropriate cases, failure to exhaust may be raised as the basis for a motion to dismiss."); *see, e.g.*, *Walker v. Little*, No. 22-3451, 2023 WL 2570562, at *1 (3d Cir. Mar. 20, 2023) (affirming grant of motion to dismiss based on failure to exhaust administrative remedies).

The DOC's grievance policy, DC-ADM 804, sets forth a three-step process for review of inmate grievances. An inmate must initially submit a written grievance to the Facility Grievance Coordinator or his designee within fifteen working days after the event upon which the grievance is based. DC-ADM 804, § 1.A(5), (8). The grievance must state the date, approximate time and location of the events giving rise to the grievance, must identify individuals directly involved in the events, and shall state any claims the inmate wishes to make based on those events. *Id.* §

1.A(11). If the Facility Grievance Coordinator determines that the grievance is properly submitted, a different staff member will be designated to serve as the Grievance Officer for that grievance. *Id.* § 1.C(3). The Grievance Officer will review the grievance, issue a decision on the Initial Review Response Form, and provide the decision to the Facility Grievance Coordinator who, in turn, will provide the decision to the inmate. *Id.* § 1.C(5).

If the grievance is rejected, the inmate has fifteen working days to appeal in writing to the Facility Manager. *Id.* § 2.A(1)(a). The rejection must be received by the inmate from the Facility Grievance Coordinator before any appeal to the Facility Manager may be sought. *Id.* § 2.A(1)(b). Any appeal must be clearly labeled as an appeal, include the grievance number, be legible, and contain the reasons for appealing the initial review response/rejection. *Id.* § 2.A(1)(d). Failure to comply with the foregoing may result in the appeal being dismissed. *Id.* § 2.A(1)(e).

If the Facility Manager rejects the appeal, the inmate may appeal for Final Review with the Secretary's Office of Inmate Grievances and Appeals ("SOIGA") within fifteen working days of the denial of the Facility Manager's appeal. *Id.* § 2.B. The appeal to Final Review must be clearly labeled as an appeal at the top of the document; include the grievance number; be legible and understandable; not exceed two pages; contain a reason or reasons for appealing the Facility Manager's decision; and be handwritten or typed on writing paper or submitted on the Inmate Appeal to Final Review form. *Id.* § 2.B(1)(e). Failure to comply with the foregoing may result in the appeal to Final Review being dismissed. *Id.* § 2.B(1)(f). Also, an inmate appealing a grievance to Final Review must provide the SOIGA with the following documents: (1) a legible copy of the Initial Grievance; (2) a copy of the initial review response/rejection; (3) a legible copy of the Inmate Appeal to the Facility Manager; (4) a copy of the Facility Manager's decision; and (5) a written appeal to the SOIGA. *Id.* § 2.B(1)(j)(1)-(5). If the inmate fails to provide any of the

foregoing documentation, his or her Final Appeal may be dismissed. *Id.* § 2.B(1)(j)(6). The SOIGA will respond to the Final Appeal within thirty working days of receipt unless otherwise extended and/or referred. *Id.* § 2.B(2).

## IV.   ANALYSIS

Defendant Kernizan argues in his Motion that Rice failed to fully exhaust administrative remedies prior to filing this lawsuit, as required by the PLRA and in accordance with DC-ADM 804. (*See* ECF No. 20 at 7-10.) Specifically, Kernizan contends that DC-ADM 804 establishes a three-tier administrative review, and while Rice filed Grievance No. 1026926 on March 28, 2023, and timely appealed to the Facility Manager, thereby satisfying the first two tiers, Rice failed to include a written appeal to Final Review and failed to timely correct this error, rendering his Final Appeal untimely. (*Id.* at 9-10.) Rice contends in his Complaint and in his Response to Defendant's Motion,[4] that he fully exhausted and the "DOC at SCI Phoenix fail[ed] to give [him] a timely response" to his written appeal. (*See* ECF No. 2 at 7-8, ECF No. 23 at 2.) Accordingly, at issue here is whether Rice has properly exhausted administrative remedies per the prison's procedures mandated by DC-ADM 804.

The Court has reviewed the grievance records in this case and concludes that Rice failed to comply with the procedural requirements at the final level of appeal.[5] (*See* Grievance Records

---

[4]   Although Rice continues to argue that Defendant Kernizan's Motion was filed untimely, his contention is incorrect. As noted by this Court's October 1, 2024 Order denying Rice's Motion for Default Judgment (*see* ECF No. 26), Kernizan returned his waiver on July 18, 2024 and his response to the Complaint was due on August 19, 2024. (*See* ECF No. 17.) Kernizan responded to the Complaint by filing his Motion on August 19, 2024. (*See* ECF No. 20.)

[5]   This Court may consider the grievance records that are attached to the Defendant's Motion without converting the motion to one for summary judgment. (*See* ECF No. 20-1 at 3-13.) Rice has not claimed that the grievance records contained herein are inauthentic or incomplete. (*See* ECF No. 23.) He has also referred to the March 28, 2023 grievance in his Complaint and has alleged that he exhausted his administrative remedies. *See, e.g., Freedland v. Fanelli*, No. 18-2250,

7

attached at ECF No. 20-1 at 2-13.) Specifically, while the grievance records submitted by Kernizan demonstrate that Rice complied with the first two levels of review with respect to Grievance No. 1026926, Rice failed to provide a timely written appeal to the SOIGA in accordance with DC-ADM 804, § 2.B(1)(j)(5), which requires an inmate to include "a written appeal to the SOIGA" for his appeal to final review to be considered. (*See* ECF No. 20-1 at 4.) Rice was notified of his failure to include a written appeal on February 8, 2024. (*Id.*) It appears Rice subsequently submitted a written appeal "for final review," (*id.* at 3), following which SOIGA considered his appeal and, according to the Final Appeal Decision Dismissal, dismissed Rice's appeal at the final appeal level because it was not submitted timely. (*Id.* at 2.) Specifically, the decision advised Rice that his "appeal to final review needed to be postmarked by 2/06/24; however, it was not postmarked until 2/20/24."[6] (*Id.*) In short, Grievance No. 1026926 was dismissed at the final level of appeal because Rice did not provide all the necessary documentation for consideration of his final review appeal in the time frame required by the relevant policy. (*Id.*) Because Rice's grievance was dismissed at the final level of review for being procedurally defective, Rice failed to properly exhaust his administrative remedies.[7] *See Woodford*, 548 U.S. at 90 (explaining that

---

2019 WL 2448810, at *2 (E.D. Pa. June 10, 2019) (citing *Spruill*, 372 F.3d at 223). The Court did not consider any other exhibits attached to the Defendant's Motion.

[6]     As noted above, the grievance records show that Rice was notified of his failure to include a written appeal on February 8, 2024. (ECF No. 20-1 at 4.) It appears that after receiving notice of the procedural defect, Rice predated and submitted his written appeal in an attempt to correct his error. (*Id.* at 3.) The written appeal is dated "1-16-24-23," but also notes that postage was deducted on February 1, 2024. (*Id.*) However, the written appeal also contains a time stamp of February 27, 2024, with a written notation of "2/20" which corresponds with the postmark date referred to in the Final Appeal Decision Dismissal. (*Id.* at 2.) Rice does not speak to this issue in his response to the Defendants' Motion.

[7]     Defendant Kernizan also argues that Rice failed to comply with the DOC's grievance policy because his grievance did not precisely state the claim he presented in his Complaint. (*See* ECF No. 20 at 7-8.) Kernizan argues that the initial grievance stated that Kernizan "threaten[ed] to use excessive force" as opposed to the current allegation that Kernizan actually used excessive

8

proper administrative exhaustion "means using all steps that the agency holds out, and doing so *properly* (so that the agency addresses the issues on the merits)" (citation omitted)); *see also Williamson v. Wexford Health Sources, Inc.*, 131 F. App'x 888, 890 (3d Cir. 2005) (*per curiam*) (stating that inmate "was required to present his claim at all levels of the administrative appeals process before filing suit" and finding that his claim was procedurally defaulted "[b]ecause any attempt to appeal the denial of the initial grievance would now be time-barred"); *Presbury v. Wenerowicz*, No. 16-4949, 2021 WL 4803824, at *3 (E.D. Pa. Oct. 13, 2021) (prisoner did not fully and properly exhaust his grievance because of various procedural deficiencies including his failure to include required documentation); *Washington v. Wenerowicz*, No. 14-6916, 2017 WL 4404405, at *8 (E.D. Pa. Oct. 3, 2017) (prisoner did not properly exhaust when grievance submitted to the SOIGA at the final level of appeal exceeded the two-page limit and was not resubmitted on a timely basis).

Rice does not argue that administrative remedies were unavailable to him, nor does he direct the Court to any circumstance present in this case that would support a conclusion that administrative remedies were unavailable for his claim of excessive force against Defendant Kernizan.[8] *See Rinaldi*, 904 F.3d at 268. Rice did not present his claim at all levels of the administrative appeals process before filing suit and there is no basis to conclude that administrative remedies were not available to him when he filed his grievance. Because any

---

force against him. (*Id.*) According to the grievance records, however, it appears from the Facility Manager's Appeal Response that the DOC investigated the use of excessive force by Kernizan, as opposed to a mere threat of force. (*See* ECF No. 20-1 at 8.)

8      It is unclear how Rice's allegation that he did not receive the final review decision would impact whether he had actually exhausted the process as opposed to whether he knew he had exhausted the process. Indeed, based on the allegations in the Complaint, it appears Rice believed he had exhausted based on the documents he submitted during the grievance process, including at the final review stage.

attempt to appeal the denial of the initial grievance would now be time-barred, Rice's excessive force claim against Defendant Kernizan is procedurally defaulted.

## V. CONCLUSION

For the foregoing reasons, Defendant Kerizan's Motion to Dismiss will be granted and the remainder of Rice's Complaint will be dismissed without prejudice. *See Talley v. Constanzo*, No. 19-2650, 2022 WL 17352167, at *3 (3d Cir. Dec. 1, 2022) ("Although we agree with the District Court's dismissal of Talley's federal claims for lack of exhaustion, that dismissal should have been without prejudice, not with prejudice."); *Monroe v. Nunn*, No. 21-2218, 2022 WL 885095, at *1 (3d Cir. Mar. 25, 2022) ("When a prisoner does not exhaust his administrative remedies, his complaint should be dismissed without prejudice to enable him to cure the procedural defect."). The Court concludes, however, that amendment is futile as Rice cannot cure his procedural default. Accordingly, leave to amend will not be granted. An appropriate order follows, which shall be docketed separately. *See* Fed. R. Civ. P. 58.

BY THE COURT:

/s/ Hon. Kelley B. Hodge

**HODGE, KELLEY B., J.**